[No. 1747, September 9, 1915.]
## STATE v. OGDEN.

### SYLLABUS BY THE COURT.

1. An indictment for criminal libel, which sets forth the alleged libelous article, and alleges that the words used were intended to and did have a certain meaning, which, if true, clearly constituted libel of an individual, is sufficient to withstand a demurrer or motion to quash. Whether the alleged libelous article was a publication concerning the government or some of the branches thereof, or was directed at the individual named, as charged in the indictment, was a question for the jury to determine, as the meaning to be attributed to words alleged to be libelous is to be settled by the jury.

P. 643

2. Where a party, in a trial court, objects to the admissibility of a newspaper in evidence, on the ground that it is incompetent, immaterial, and irrelevant, he cannot here urge the objection that such newspaper was inadmissible because it had not been properly identified.    P. 645

State v. Ogden, 20 N. M. 636.

3. A demurrer to the evidence waives all objections to·
the admissibility of the evidence to which it is addressed,.
and amounts to an admission that such evidence is compe·
tent, that the witnesses are entitled to credit, and that all
inferences favorable to the opposite party which may reason-
ably be drawn from the evidence are true.

P. 646

· Appeal from District Court, Mora County; J. Leahy,.
Judge.

Irvin Ogden was convicted of criminal libel, and ap-·
peals. Affirmed.

J. B. Lusk of Roy and Isaac Barth of Albuquerque,.
for appellant.

The indictment does not charge a libel.
Sec. 17, c. 11, L. 1889.

As to what is colloquium, see:
Van Veichten v. Hopkins, 4 Am. Dec. 339; State v..
Elliot, 61 Pac. 981; Barnes v. State, 41 Atl. 781; 2·
Words & Phrases, 3569; Squires v. State, 73 Am. St. R..
904; Grand v. Dreyfus, 54 Pac. 389; Wallace v. Home-·
stead Co., 90 N. W. 838; Cheetam v. Tillotson, 5 Johns.
430; Stowe v. Congress, 4 Conn. 17.

An innuendo does not vary a fact, nor can it change·
the natural meaning of the language; its office being to
explain and not to extend or enlarge the meaning of the·
words and it may not introduce new matter and it must
not put upon defendant's words a construction· that they
will not bear.
4 Words and Phrases, —; Wood v. Boile, 55 Am. St.
Rep. 747·; Stutzen v. Stutzen, 66 N. E. 773; Coal v. Neu-
stadter, 29 Pac. 550; Stitzell v. Reynolds, 79 Pa. 488;·
Jones v. Roberts, 50 Atl. 1071; Dunn v. Maier, 82 Fed..
169; Price v. Conway, 8 L. R. A. 193.

The words being incapable of the meaning ascribed to them by the innuendo, they are prima facie not actionable.

Dunn v. Maier, 82 Fed. 169; Citing Odgers' Slander and Libel, p. 100; Stitzell v. Reynolds, 59 Pa. 488.

H. S. BOWMAN, Assistant Attorney General, for appellee.

The article does not refer to the several branches of the government, and therefore is not privileged.

Sec. 17, c. 11, Laws 1889.

A reference to the words of the article itself constitutes the best guide to a proper construction of the article. For cases throwing light on an alleged unjustifiable use of the innuendo, see,

Keasling v. McCall, 36 Ind. 321; Drummond v. Leslie, 5 Black (Ind.) 453; Richardson v. State, 66 Md. 205.

The indictment is sufficient under attack by demurrer.

Commonwealth v. Keenan et al., 67 Pa. St. 203; Sanderson v. Caldwell, 45 N. Y. 398; State v. Spear et al., 13 R. I. 324; Montgomery v. Knox, 3 South. (Fla.) 211; Petsch v. Dispatch Printing Co., 40 Minn. 291; State v. Schmidt, 49 N. J. L. 581; State v. Mott, 45 N. J. L. 294; Reeves v. Bowden, 97 N. C. 32.

As to introduction of newspaper, see,

Wigmore on Evid.; Odgers on Libel; McLaughlin v. Russell, 17 Ohio, 475.

Evidence of the opinion of witnesses that the article referred to the assessor of Mora county was admissible.

Colbert v. Journal Pub. Co., 142 Pac. (N. M.) 146; DeArmond v. Armstrong, 37 Ind. 35; Smawley v. Stark, 9 Ind. 386; Smart v. Blanchard, 42 N. H. 137; McCue v. Furgeson, 73 Pa. St. 333; State v. Mason, 26 Oreg. 273, 38 Pac. 130, 26 L. R. A. 779; 2 Greenleaf Evid., sec. 417.

"The truth of the innuendoes, the colloquium and of the inducement, or extrinsic matter, is for the jury."

Newell on Slander and Libel (2d Ed.) p. 628; Sanderson v. Caldwell, supra; Reeves v. Bowden, supra; Prosser v. Calles (Ind.) 19 N. E. 735.

### OPINION OF THE COURT.

ROBERTS, C. J.—Appellant was tried and convicted in the district court of Mora county under an indictment returned by the grand jury, charging him with criminal libel against J. D. Medina, assessor of Mora county. Three alleged errors are here urged as grounds for reversal, the first being that the indictment fails to state facts sufficient to constitute an offense, and that the court should have sustained appellant's demurrer thereto; second, alleged error in permitting a copy of the Santa Fé New Mexican, containing certain evidentiary matter, to go to the jury without proper identification; third, overruling appellant's demurrer to the evidence. The alleged errors will be considered in the order stated.

The indictment, omitting formal allegations, alleges that Jose D. Medina was the duly elected and qualified assessor of Mora county, and that he had been holding and occupying said office continuously from the 15th day of January, A. D. 1912, up to the date of the finding of the indictment. The indictment then alleged that prior to the 31st day of January, A. D. 1914, Irvin Ogden, the defendant, was the editor of a certain weekly newspaper, to-wit, the Spanish-American, published at Roy, county of Mora, and state of New Mexico. It was then alleged that said Irvin Ogden, on the 31st day of January, 1914, at the county of Mora, etc., wickedly, maliciously, unlawfully, and feloniously and with intent to injure, vilify, and prejudice the said Jose D. Medina, and to deprive him of his good name, fame, credit, and reputation, and to bring him, the said Jose D. Medina, into contempt among honorable persons, etc., did contrive, make, write, print, publish, sell, and circulate, and cause to be printed, sold, and circulated, in the said weekly newspaper, the said paper

then and there having a circulation and circulating in said county of Mora, state of New Mexico, a certain false, scandalous, malicious, and defamatory statement and libel in the form of a newspaper article, of and concerning the said Jose D. Medina, and with the intent to injure the reputation of the said Jose D. Medina, which said statement and libel conveyed the idea that he, the said Jose D. Medina, had been guilty of an act disgraceful to him as a member of society and the natural consequence of which was to bring him, the said Jose D. Medina, into contempt among honorable persons, and which said statement then and there conveyed the idea that he, the said Jose D. Medina, was guilty of a penal offense, and which statement and libel then and there conveyed the idea that the said Jose D. Medina, as assessor of the county of Mora aforesaid, was dishonest, and therefore unworthy of said office, and that while in the said office of assessor he, the said Jose D. Medina, had been guilty of malfeasance, rendering him unworthy of the said office, and which statement and libel was of the tenor following, to-wit:

"That the New Mexico administration is doing all in its power to right some of the wrongs that are still trying to hold over from former conditions is further evidenced by the effort of Edward D. Tittman, Dist. Atty. of Socorro County, to remove County Assessor A. B. Baca on charges of incompetence, corruption and refusal to do his duty.

"Of the twenty-five charges against him which are published or summarized in the Santa Fé New Mexican, there is not one which cannot be duplicated in Mora county, and the vicinity of Roy can furnish instances of corruption, incompetence and depravity that outclass most of them.

"And yet we, as a rule, 'stand here like fat oxen, waiting for the butcher's knife.' Why in time a community of free-born American citizens should stand idly by and see their every

> right and liberty trampled upon by their hired
> servants, whether it be through incompetence or
> malice, is beyond our understanding."

That the 25 charges published and summarized in the
Santa Fé New Mexican, the said Santa Fé New Mexican
being a daily newspaper published in the state of New
Mexico, were so published and summarized in the issue
of the said Santa Fé New Mexican of the date of January
24, 1914, which said publication, article, and summary
was the newspaper publication, article, and summary re-
ferred to in the aforesaid statement and libel published
in the Spanish-American as hereinbefore set out, and were
a publication and summary of the 25 charges against
County Assessor A. B. Baca, then and there county asses-
sor of the county of Socorro, in the state of New Mexico,
referred to in the hereinabove set out statement and libel
published as aforesaid in the said Spanish-American, the
said article, publication, and summary referred to in the
said statement and libel as having been published as afore-
said in the Santa Fé New Mexican, of the tenor following,
to-wit:

The indictment then set forth 25 charges against the
assessor of Socorro county, contained in the issue of the
Santa Fé New Mexican of the 24th day of January, 1914,
which it is not disputed charged the assessor of Socorro
county with certain crimes and misdemeanors. The in-
dictment then proceeded as follows:

> "Meaning and intending to state, and thereby
> stating and then and there and thereby convey-
> ing the idea that he, the said Jose D. Medina, in
> his official capacity as assessor of Mora county,
> in the state of New Mexico, had committed simi-
> lar acts of omission, negligence, and corruption
> as were averred in the charges made against A.
> B. Baca, assessor of Socorro county, in the state
> of New Mexico, as published and summarized in
> the said Santa Fé New Mexican as hereinabove
> fully set out, and that similar charges of incom-
> petence, corruption, refusal to perform his duty,

and depravity to those made against the said as-
sessor, A. B. Baca, as summarized in the said
Santa Fé New Mexican, would be true if made
against said Jose D. Medina, and meaning and
intending to state, and thereby stating and then
and there and thereby conveying the idea that
similar charges of incompetence, corruption, de-
pravity, and refusal to do his duty could be filed
against the said Jose D. Medina, as assessor of
the county of Mora aforesaid, as had been filed
against the said A. B. Baca, assessor of the coun-
ty of Socorro aforesaid, and meaning and intend-
ing to state and thereby stating and then and
there and thereby conveying the idea that he,
the said Jose D. Medina, had been guilty of a pe-
nal offense in committing similar criminal acts
of omission, negligence, and refusal to perform
his duty and depravity to those charged against
County Assessor A. B. Baca, of the county of So-
corro aforesaid, as summarized in the said Santa
Fé New Mexican, the said summary and publi-
cation of the said charges having been herein-
before fully set out, and meaning and intending
to state and then and there and thereby convey-
ing the idea that he, the said Jose D. Medina, as
assessor of the county of Mora aforesaid, was
dishonest and guilty of malfeasance rendering
him unworthy of his office in that he was guilty
as assessor of the said county of Mora, of acts of
incompetence, corruption, negligence, and refu-
sal to do his duty and depravity charged against
the said A. B. Baca, assessor of the county of
Socorro aforesaid, as published and summarized
in the said article in the said Santa Fé New Mex-
ican hereinbefore fully set out, the said Irvin
Ogden then and there well knowing the said
scandalous, malicious, and defamatory statement
and libel to be false, to the great damage, scan-
dal, and disgrace of the said Jose D. Medina,

> contrary to the form of the statute in such case
> made and provided, and against the peace and
> dignity of the state of New Mexico."

[1] Appellant's first contention is that the article in question was not libelous, as it was a publication concerning the government or some of the branches thereof; that under section 1728 of the Code such publication does not constitute libel. The indictment charged that the alleged scandalous words were intended to and did refer to Jose D. Medina. What meaning is to be attributed to words alleged to be libelous is to be settled by the jury. State v. Schmitt, 49 N. J. Law, 579, 9 Atl. 774. If it be true that the allegel libelous article was directed against Medina, as an individual, accusing him of crimes and misdoings which would subject him to contempt of the people, the indictment would be good in so far as this objection is concerned; whether it did so or not would be a question of fact which the jury would be required to determine under the evidence produced. The article in question alleges that charges of incompetence, corruption, and refusal of the assessor of Socorro county to do his duty have been filed by the district attorney of that county, and that such charges are contained in a recent issue of the Santa Fé New Mexican, and that of such charges there is not one which cannot be duplicated in Mora county. It certainly cannot be seriously argued that this latter clause does not mean that the assessor of Mora county could be charged with the same identical offenses, of incompetency, corruption, and refusal to do his duty, as that charged against the assessor of Socorro county. The usual meaning of the words used and the meaning of the word "duplicate" clearly shows that it was the intention of the writer of the article to charge the Mora county assessor with the same offenses that were charged against the assessor of Socorro county.

The Century Dictionary defines the word "duplicate" as follows:

> "To double, repeat, produce a second (like the
> first), make a copy or copies of."

In the New Standard Dictionary "duplicate" is defined:

> "To make, furnish, or obtain a duplicate or re-
> production of, by imitation, art, or otherwise, or
> make an exact copy of, reproduce exactly." "To
> make a thing or do an act exactly like the pre-
> ceding one."

If we should use the synonym "reproduce exactly," we
would have:

> "Of the twenty-five charges against him which
> are published or summarized in the Santa Fé
> New Mexican, there is not one which cannot be
> *reproduced exactly* in Mora county."

And no question could be raised as to whom the article
refers; it being clearly evident that, if there were condi-
tions existing in Mora county which could "reproduce ex-
actly" the same charges that were filed against the Socorro
county assessor, the charges could be laid at the door of no
one but the Mora county assessor.

It is apparent, therefore, that the article in question
does not refer to the several branches of the government,
as contended by appellant, but does refer to the assessor
of Mora county, and is therefore not privileged under the
provisions of section 17, c. 11, Laws 1889 (section 1728,
Code 1915.)

The indictment in question sets forth the publication
and shows the application of the alleged libelous matter
to Jose D. Medina, and by innuendo points out the mean-
ing where it does not clearly appear from the libel. We
think the indictment is sufficient under the rules of plead-
ing in such cases as stated in Newell's Slander & Libel
(3d Ed.) § 1116. The author says:

> "The charge states the offense. The collo-
> quium shows the application of the libelous mat-
> ter to the person in question, and the innuendoes
> point out the meaning where it does not clearly
> appear from the libel."

[2] Upon the tiial the state called one Blas Sanchez as a witness, who testified that he was familiar with the publication known as the Santa Fé New Mexican; that he received it regularly every day; saw the issue of the paper in question;. read the statement of the 25 charges published against the assessor of Socorro county; and that the paper exhibited to him by the prosecuting attorney was a copy of the issue of the Santa Fé New Mexican of January 24, 1914. The district attorney then offered the paper in evidence, to which the defendant's attorney objected, on the ground that it was incompetent, irrelevant, and immaterial. In this court it is urged that the paper should not have gone to the jury, because it was not properly identified; it being the contention of appellant's attorney, if we understand him correctly, that it was necessary to identify the paper in question by the evidence of some person who actually saw it come from the press.

Wigmore on Evidence, § 440, p. 520, states the rule as follows:

> "An impression from type is evidence of the contents of another impression from the same type; the required assumption being merely that both were produced from the same type. The easier mode of proof is usually by a witness who offers one impression as representing his recollection of the other."

In Ogders on Libel and Slander the rule is stated to be:

> "Where a large number of copies are printed from the same type, or lithographed at the same time by the same process, none of them are copies in the legal sense of the word. They are all counterpart originals, and each is primary evidence of the contents of the rest."

In the case of McLaughlin v. Russell, 17 Ohio, 475, where there was objection to the admission in evidence of a newspaper to show a libelous article, upon the ground that it was not the original paper which the witness saw, and that its loss had not been accounted for, the court used the following language:

"It is to be observed in reference to this objection that the proof was that several hundred sheets of the impression containing the libel had been struck off, that this paper offered in evidence was one of the impressions, and identical with that read to the witness by McLaughlin. The objection that this paper was but secondary evidence is not founded upon correct premises. It was no more secondary in its nature than would be one duplicate of one original contract secondary evidence to the other. Any one number of the entire impression was as much an original as any other number. There is no reason why any difference should be made between the numerous sheets of the same impression. All must of necessity be alike."

But assuming, for the sake of argument, that the paper had not been properly identified, the objection is not available here, because it was not called to the attention of the trial court.

"Where evidence is objected to at the trial, if the party would save an exception to the ruling of the court if adverse to him, such as will be available on appeal or error, he must frame his objection so as to bring to the attention of the trial court the specific ground upon which he predicates it, and this must be stated in his bill of exceptions. He waives all grounds not so specified." Volume 1, Thompson on Trials, § 693.

And in the next succeeding section of the same work it is stated that an objection that evidence is irrelevant, incompetent, and immaterial is held to be merely a general objection and properly overruled if the evidence is admissible for any purpose.

[3] The appellant failed to call to the attention of the trial court the fact that he claimed that the paper in question had not been sufficiently identified to entitle it to go to the jury. It is a well established rule of practice that the appellant will not be permitted to urge in the ap-

State v. Ogden, 20 N. M. 636.

pellate court a ground of objection to the admissibility of evidence not called to the attention of the trial court at the time the evidence is proffered. Consequently, appellant cannot here urge error in the admission of the paper in evidence.

It is lastly urged that the trial court erred in not sustaining appellant's demurrer to the evidence in this case. The court permitted several witnesses to testify to having read the article, knowing the parties interested, and that in their opinion the article in question referred to Mr. Medina, the assessor of Mora county. Appellant argues that this evidence was inadmissible, as a proper foundation had not been laid under the rule announced by this court in the case of Colbert v. Journal Publishing Co., 142 Pac. 146. The proposition well established by the adjudicated cases that a demurrer to the evidence waives objections interposed to the admissibility of evidence by the party who files the demurrer, and that upon a demurrer to the evidence no objection to its competency can be taken, is evidently overlooked by appellant. Assuming that this evidence was properly submitted to the jury, as we must in determining this question, it requires no extended discussion to show that this assignment of error is without merit. An extended discussion of the rule above announced will be found in the case of Southern Ry. Co. v. Leinart, 107 Tenn. 635, 64 S. W. 899, where practically all the authorities are collected. See, also, 6 Enc. of Pleading and Practice, 445; 7 Standard Enc. of Procedure, 27. In the case of International & Great Railway Co. v. Davis, 17 Tex. Civ. App. 341, 43 S. W. 540, the rule is stated as follows:

"The demurrer waives all objections to the admissibility of the evidence to which it is addressed, and amounts to an admission that such evidence is competent, that the witnesses are entitled to credit, and that all inferences favorable to the opposite party which may reasonably be drawn from the evidence are true."

Such being the case, the verdict of the jury is supported by the evidence, and the judgment will be affirmed; and it is so ordered.

HANNA and PARKER, J.J., concur.